GEORGE E. STONE, PLAINTIFF–APPELLANT AND CROSS–RE-
SPONDENT, v. TOWNSHIP OF OLD BRIDGE, A MUNICIPAL
CORPORATION OF THE STATE OF NEW JERSEY, DEFEND-
ANT–RESPONDENT, AND OLD BRIDGE MUNICIPAL UTILI-
TIES AUTHORITY, OLD BRIDGE MUNICIPAL UTILITIES AU-
THORITY IN DISSOLUTION AND EDWARD MCLANE, DE-
FENDANTS–RESPONDENTS AND CROSS–APPELLANTS.

Argued February 29, 1988—Decided June 30, 1988.

*James J. Cleary* argued the cause for appellant and cross-respondent (*James J. Cleary,* attorney; *James J. Cleary* and *James E. Madden,* on the brief).

*Peter S. Wersinger, III,* argued the cause for respondents and cross-appellants (*Heffernan & Wersinger,* attorneys).

*Jerome J. Convery,* Township Attorney, argued the cause for respondent.

The opinion of the Court was delivered by

HANDLER, J.

■ In this case, the narrow controversy involves the continuing enforceability of a fixed-term employment contract covering the position of Executive Director of a municipal utilities authority. The Court is asked to determine whether such an employment contract, entered into by a local utilities authority, remains valid and enforceable following the dissolution of that authority and another local utilities authority and the establishment of a new municipal utilities authority created to perform the combined functions of the dissolved authorities. In these circumstances, we conclude that under the statutory provisions by which the contracting authority was dissolved, the successor authority was not required to assume the employment contract of the predecessor authority and that the decision to terminate such an employment contract was not an abuse of discretion. Accordingly, we reverse the judgment of the Appellate Division, which allows a result inconsistent with our determination.

I.

George Stone, who brings this appeal, had been the Executive Director of the Old Bridge Municipal Utilities Authority ("Water Authority"). On September 9, 1982, Stone's employment contract was renewed for a five-year term. This contract specifically provided that Stone could be removed from office only for misconduct, failure to carry out his duties, or disability. Furthermore, it stated that if he were terminated for one of these three reasons, he would be entitled to compensation for any accumulated vacation time and sick leave.

On November 1, 1985, the Township of Old Bridge ("Township") enacted Ordinance 40–85 pursuant to the Municipal and County Utilities Authorities Law, *N.J.S.A.* 40:14B–1 to –69 (the

"Utilities Law"), and the Local Authorities Fiscal Control Law, *N.J.S.A.* 40A:5A-1 to -27 (the "Fiscal Law"). This ordinance dissolved the Water Authority as well as the Old Bridge Sewerage Authority ("Sewer Authority"). The dissolved authorities had respectively and separately provided water and sewerage services for the residents of the Township. The specific statutory provision invoked to effect the dissolution of these municipal authorities was *N.J.S.A.* 40A:5A-20, which is part of the Fiscal Law.[1] This provides that "[n]otwithstanding the provisions of any other law to the contrary, the governing body of a local unit which has established an authority shall have the power and is authorized by ordinance in the case of a municipality ... to dissolve the authority...." It also mandates the appropriate procedure for such a dissolution.

The Township's ordinance also created a new agency to perform the combined functions of the dissolved Authorities and to provide both water and sewerage services. The creation of this new governmental entity, which used the same "Old Bridge Municipal Utilities Authority" ("OBMUA") designation as the former Water Authority, was undertaken pursuant to section four of the Utilities Law, *N.J.S.A.* 40:14B-4. This empowers municipalities to create utility authorities for the provision of services including water and sewerage. *See N.J.S. A.* 40:14B-19, -20 (purpose and powers of authorities). The establishment of the new authority was also approved by the Local Finance Board of the Division of Local Government Services, Department of Community Affairs, as required by section four of the Fiscal Law. *N.J.S.A.* 40:14B-4; *see N.J.S.A.* 40A:5A-5 (providing standard for action by Local Finance Board).

---

[1] In relying on this section of the Fiscal Law, the Township thus chose not to use the dissolution provision provided in the Utilities Law, *N.J.S.A.* 40:14B-13. Unlike the Fiscal Law, the Utilities Law imposes requirements, such as the absence of any outstanding debts or obligations, that the Township could not readily satisfy.

The OBMUA appointed Edward McLane, who had been Executive Director of the former Sewer Authority, as its Executive Director. Shortly thereafter OBMUA terminated Stone's employment, without granting severance pay or other benefits, notwithstanding the guarantees of his contract. Stone was, however, offered a lesser position for a substantially lower salary.

Stone then brought suit against OBMUA, McLane, the former Water Authority, and the Township, contending that the termination of his employment as Executive Director was unlawful and that OBMUA was statutorily required to continue the employment. He sought damages for the breach of his employment contract with the Water Authority. After initially entering an order to show cause and temporarily restraining OBMUA from removing Stone from its payroll, on February 27, 1986, Judge Skillman, then of the Chancery Division, granted defendants' motion to dismiss Stone's complaint for failure to state a claim on which relief could be granted. In so doing the court ruled that the statutory scheme under which the Water Authority had been dissolved and OBMUA created did not mandate the continuation of any employment contract. Instead, the court found that this scheme guaranteed the payment only of "creditors and obligees," which did not include employees with fixed term contracts such as Stone's. The court also understood that the implementing ordinance essentially reflected the requirements of the relevant statutory requirements.

Following this decision, OBMUA immediately terminated Stone from its payroll. He then appealed. In a reported opinion the Appellate Division reversed the trial court judgment. 215 *N.J.Super.* 361 (1987). There being a dissent in the Appellate Division, Stone appealed to this Court pursuant to *Rule* 2:2–1(a)(2) seeking a judgment in accordance with that dissent.

## II.

Both the majority and dissenting Appellate Division opinions reflect the view that the enforceability of Stone's employment contract is not mandated by statutory law but is instead a matter governed by common-law principles. Applying these principles, the majority opinion was that the contract would be binding on OBMUA unless it could be shown on remand that the employment was eliminated for reasons of economy. 215 *N.J.Super.* at 367, 369. The dissent took the position that Stone's employment contract with the former Water Authority was binding on OBMUA and that no exception for reasons of economy existed. 215 *N.J.Super.* at 374. Clearly implicated in both opinions is the view that statutory law does not govern or mandate the enforceability of the contract. However, the narrow issue that separates the majority and dissent, namely, in what manner common-law principles apply, cannot be addressed without a fuller consideration of the validity of OBMUA's actions in terminating the employment contract in light of relevant statutory authority.[2] This analysis must

---

[2]It is, of course, possible to define the issue separating the majority from the dissent below as whether or not a fixed term employment contract can be terminated without liability for damages by a successor authority only if the termination is done for reasons of economy and comparative fitness. Our dissenting colleagues would so describe the issue and conclude that this is the only issue cognizable on appeal under *Rule* 2:2–1(a)(2). *Post* at 124. It is, however, quite reasonable to describe the issue that separates the majority and dissenting opinions below as whether such an employment contract may be terminated without any liability in the sole discretion of the successor authority (which according to the dissent, it could not) or in the limited discretion of the authority (which, the majority ruled, it could). It is the *judgment* of the Appellate Division, from which this appeal is taken under *Rule* 2:2–1(a)(2), which guides us to a proper formulation of the issue on appeal. In light of the conditions of the remand, that judgment can properly be understood to order that the employment contract can be terminated without liability, not in the sole discretion of the successor agency, but only on satisfying particular conditions. 215 *N.J.Super.* at 370. While the dissent opts for a narrow rendition of the issue on appeal, the case fairly poses the issue whether the contract can be lawfully terminated without conditions—the majority below concluding it cannot, the dissent that it can. Indeed, it can be observed that

proceed within the statutory framework governing the Township's dissolution of the former Authorities and its contemporaneous creation of OBMUA as their successor.

The dissent expressed the view that the validity and enforceability of the employment contract is not determined by the provisions in any statute but is governed solely by the general common-law rule that requires a successor municipal corporation to assume contract liabilities, including employment contracts of its predecessor. *Id.* at 374. In expressing this view, the dissent acknowledged that civil service appointments could be terminated for reasons of economy. *Ibid.* It found that this exception was inapplicable to the contractual employment context, however, notwithstanding the fact that the separate directorships of the former sewerage and water authorities had been consolidated into a single position in the successor authority. *Id.* at 372–74.

As noted, the majority took a somewhat different but not wholly inconsistent approach. It reasoned that the question of whether the exception for reasons of economy applied in this case could not be resolved on the record, as it required further factual findings about the rationale behind Stone's termination. The Appellate Division majority thus determined that Stone's employment contract was binding on OBMUA unless reasons of economy could be adduced for its termination. It therefore

---

the *reasons* for each of these respective rulings, *i.e.,* that the result is governed by common law, and the *reasons* underlying the judgment of the trial court, *i.e.,* that the result is governed by statute, are not the crux of the appeal; it is the judgment that is the focus of the appeal. *See Heffner v. Jacobson,* 100 *N.J.* 550, 553 (1985); *State v. Siciliano,* 21 *N.J.* 249, 260 (1956); *Chimes v. Oritani Motor Hotel, Inc.,* 195 *N.J.Super.* 435, 443 (App.Div.1984). Nevertheless, implicit in the reasoning of both the majority and the dissent is a rejection of a proposition of law, *i.e.* that contractual liability is not governed by a particular statute. The rule providing for an appeal as of right involving a dissent, *R.* 2:2–1(a)(2), was not intended to bar our examination into such an implicit legal issue or to foreclose a determination of the correct proposition of law with respect to it. Moreover, all the parties in the appeal before us argued the relevancy of the statute.

ordered that the case be remanded to determine: (1) whether after the creation of OBMUA the positions of water and sewerage executive directors were indeed consolidated into a single post, *i.e.*, the new agency did not continue separate jobs with the same functions under new titles such as assistant or deputy to the Director in charge of water or sewerage; and (2) if only a single consolidated position was created, whether it had been filled by someone with an equal or greater claim to it. *Id.* at 370.

■ We disagree with the judgment of the Appellate Division, which, in effect, ruled that the validity of OMBUA's decision to terminate an employment contract is governed only by common-law principles that include considerations of economy and comparative fitness. In our opinion the enforceability of an employment contract on the successor local municipal utilities authority in this case is a matter governed by the Fiscal Law, and under that law, the assumption of such contracts is not mandated but is remitted to the sound governmental discretion of the Authority, subject, of course, to the exercise of that discretion in good faith and for legitimate governmental purposes.

According to Stone, the Fiscal Law mandates the continuation of his contractual employment rights as a condition of the dissolution of the former authority he directed. He bases this claim on the language of *N.J.S.A.* 40A:5A–20, the provision governing the dissolution of authorities by municipalities. This section states that dissolutions can be approved only if "adequate provision [is made] ... for the payment of all ... obligees ..." Reflecting this statutory mandate, the ordinance that created OBMUA and dissolved the former authorities declared that OBMUA would "assume ... all obligations of ... the prior existing utilities authority." Old Bridge Township Ordinance No. 40–85, § 4. In Stone's view, the language of the statute and ordinance guaranteed his employment contract rights. This view, he feels, is supported by the statement

released by the Senate County and Municipal Government Committee in connection with the adoption of the Fiscal Law. This specified that authorities would be permitted to dissolve only "as long as the dissolution is consistent with outstanding bond covenants and other contractual obligations."

The Fiscal Law contains no definition of either "obligation" or "obligee." Nevertheless, the intended meaning of these terms can be found through examination of how the term "obligation" is used elsewhere in the statute. Because the statute deals with a complex and sensitive subject matter, namely, local government, it is imperative that the entire statute be read comprehensively and that the meanings of its several provisions and terms reflect an internal consistency. Hence, because key words or terms are repeated throughout the enactment, it must be assumed that a uniform meaning was intended, and the same meaning should be imputed throughout the statute, unless there is a clear indication to the contrary. *See, e.g., Perez v. Pantasote, Inc.,* 95 *N.J.* 105, 116 (1984).

The word "obligation" appears in a number of places in the Fiscal Law, juxtaposed with words such as "bond," "indebtedness," and similar terms relating to an authority's debts. For example, *N.J.S.A.* 40A:5A-3(a)(4) speaks of an authority having the power to provide for and secure the payment of its "bonds or other obligations." Similarly, *N.J.S.A.* 40A:5A-9 refers to authorities as having the power to "incur indebtedness and issue obligations for any purpose for which an authority may issue obligations ...," while *N.J.S.A.* 40A:5A-11(d) refers to whether sufficient revenues will be earned to satisfy all obligations to the holders of an authority's bonds.

In addition, *N.J.S.A.* 40A:5A-13, in discussing temporary funding, speaks with respect to "bonds or other obligations ..." Similarly, *N.J.S.A.* 40A:5A-24 states that

any authority, in anticipation of the issuance of bonds, may borrow money and issue temporary obligations if the security agreement so provides. A temporary obligation shall be designated "bond anticipation note" or "project note"

and shall contain a recital that it is issued in anticipation of the issuance of bonds.

■ Language in the Fiscal Law's dissolution provision also suggests a particularized meaning. For example, *N.J.S.A.* 40A:5A–20 states that payment of obligees is to be done "in accordance with a security agreement or otherwise ..." As the Chancery Division correctly noted, it is obvious that "a security agreement is an action which one would associate with a bond issue or the issuance of bond anticipation notes, and not simply [the] honoring [of] an employment contract." Similarly, as Judge Skillman pointed out, the section again uses obligations in the sense of being a form of debt when it states that

[i]n the event that an authority has obligations outstanding at the time of the taking effect of the ordinance or resolution to dissolve the authority, the local unit or units dissolving the authority are authorized to issue obligations in furtherance of the dissolution, and the obligations shall have a period of usefulness not exceeding 40 years from the date of issuance. The bonds shall be authorized by a bond ordinance ...

[*N.J.S.A.* 40A:5A–20.]

These related provisions clearly indicate that obligations under the Fiscal Law are perceived as being essentially debt instruments. In light of all these provisions, it is fair to read the term "obligation" as referring to an authority's indebtedness. Bonds, project notes, and bond anticipation notes are all forms of obligations in this sense, and it is only within this context that the term "obligation" is used. In order to achieve a basic consistency and harmony of meaning, it follows that an "obligee" must be understood as the person or entity to whom such a debt is owed. As the Chancery Division below correctly pointed out, a sensible reading and fair understanding of the Fiscal Law indicates that the enactment was addressing the guarantee of obligations and the continuing protections of obligees in terms of debts actually owed, as well as the parties, the actual creditors, to whom such debts were owed.

This interpretation of the terminology in the Fiscal Law's dissolution section is further supported by the overall purpose of the legislative scheme reflected in that Law. It is clearly

evident that the intent of the Fiscal Law was to "strengthen the credit standing of municipalities, counties, and independent financing authorities," Senate County and Municipal Government Committee Statement to Assembly Bill No. 144 (1983), thus providing increased assurances concerning the financial integrity of local authorities, thereby increasing the overall attractiveness of their obligations within the financial community.[3] It is consistent with this purpose to provide for municipalities to stand by the debts of their dissolved agencies, since that would be essential to the acceptance of any newly-created authority in the eyes of the financial community. Honoring governmental debts is assuredly conducive to public confidence and credit.

Similar reasoning does not, however, apply to the preservation of employee contract rights. It is not compatible with the basic aim of the Fiscal Law to make new authorities assume all of the employment contracts of their dissolved predecessors without regard to their own need to retain such employees. It seems obvious that requiring the payment of two salaries when there is a need for only one position would promote neither efficiency nor economy. Thus it is not surprising that nothing in the legislation, nor in the ordinance dissolving the former authorities and creating OBMUA, indicates any intent to require the newly created authority to assume the managerial employment contracts entered into by the prior entity. Nor is there any reason to read such an intent into these enactments. As Judge Skillman noted:

---

[3]Reflecting this purpose, the Fiscal Law created a state agency, the Local Finance Board, which has been delegated substantial power with respect to the establishment, management, operation, and dissolution of local authorities. This Board has the power to dissolve local authorities if it is in the public interest to do so due to their financial difficulties or mismanagement. *N.J.S.A.* 40A:5A–21. In addition, dissolutions accomplished by order of local governing bodies must secure the Board's approval in order to be effective. *N.J.S.A.* 40A:5A–20.

[w]here an essential purpose of legislation and of the ordinance which has been adopted pursuant to that legislation is to improve the efficiency of providing public services, it would not be compatible with that intent of promoting economy and efficiency to require the new authority to assume all the employment contracts of the old authority, regardless of whether any need exists for employment of a particular former employee of the now dissolved authority.

A public employment arrangement or contract undertaken by a governmental entity is not similar to the contractual debts incurred in the course of conducting government business. Public employment engenders materially different considerations from those surrounding public contracting. "Historically, traditionally, and as a matter of continuing currency, the subjects of municipal employment and municipal contracting have been and continue to be separate and distinct headings of municipal law." *Fennimore v. Clementon Sewerage Auth.*, 173 *N.J.Super.* 466, 470 (App.Div.1970). Such is the case with the statute dealt with today. In the context of this case we are concerned with the statutory authority of local government entities to employ managerial personnel in the discharge of their governmental responsibilities. This is a concern quite different from incurring contractual indebtedness. If the Legislature had desired to mandate that successor authorities had no independent discretion and that their judgment was to be conditioned on their assumption of public employment contracts for managerial positions of dissolved entities, it would have so expressed itself with greater clarity and specificity. It is implausible that it would have circumscribed governmental discretion and responsibility with respect to employment through an oblique and vague reference to the assumption of obligations within the context of a clause that unmistakably refers to preservation of the duty to pay off debts.

It is clearly within the power of the Township to dissolve existing agencies in order to replace them with new entities that are more efficient and economical. It has been said that "[w]hen the State employs officers or creates municipal corporations as the mere agencies of government, it must have the power to discontinue the agency whenever it comes to be

regarded as no longer important." T. Cooley, *Constitutional Limitations* 276 (3d ed. 1874), *quoted in Fidelity Union Trust Co. v. New Jersey Highway Auth.*, 85 *N.J.* 277, 298 (1981). Moreover, "[t]he fact that a person is appointed for a definite term does not preclude a municipality from abolishing the office or position." *McCartney v. Franco*, 87 *N.J.Super.* 292, 297 (App.Div.1965). Nothing in either the Utilities Law or the Fiscal Law calls for the guaranteeing of employment arrangements made with prior entities.[4] As discussed, to do so would in fact be inconsistent with the goals of the Fiscal Law. Nor is it required by, or consistent with, the Utilities Law, which the Township followed in creating OBMUA. That law concerns itself with the provision and distribution of water, the collection, disposal and recycling of solid waste, and the generation of hydroelectric power. *N.J.S.A.* 40:14B–2. Thus it provides for authorities with wide powers but does so solely in the promotion of these concerns. *See N.J.S.A.* 40:14B–20 (powers of municipal authorities).

## III.

As long as an authority undertakes to exercise its statutory powers to promote its legitimate objectives, and does so in good faith for proper governmental purposes, it may lawfully terminate a fixed term employment contract incidental to its establishment as a successor entity created to perform governmental functions in addition to those of a predecessor authority.

The position held by George Stone was purely a creature of the former Water Authority. As such it existed only as long as the Authority itself. Stone does not in any way suggest that

---

[4]While, as noted above, *supra,* at 112–13 n. 1, the Township did not look to the Utilities Law in dissolving its former Water Authority due to the stricter requirements of that statute, it may be noted that these requirements do not include the guaranteeing of employment contracts of the authority to be dissolved. Thus the Utilities Law, which was used in creating the Water Authority, does not assist appellant in any way on the dissolution of that authority.

the dissolution of the Water Authority and corollary termination of his employment contract was in bad faith or to achieve improper ends, and in that sense, arbitrary and capricious. Therefore, once that entity was legally dissolved, Stone's position was subject to termination. The municipality's contractual obligation to Stone could have survived as a matter of law only if mandated by the statute under which the Water Authority was dissolved. While such a statutory mandate obtains with respect to the debts of agencies dissolved, there was no equivalent requirement applicable to fixed-term employment contracts. Absent such a mandate, OBMUA had a broad governmental discretion to assume and continue such a contract or, exercising good faith, to pursue other alternatives, which it did in this case.[5]

Accordingly, we disagree with views expressed in the Appellate Division. Substantially for the reasons expressed by Judge Skillman as presented in this opinion, we reverse the judgment of the Appellate Division and reinstate the judgment of the Chancery Division. No costs.

CLIFFORD, J., dissenting.

There is no fun in being the Court's resident nitpicker. It isn't pretty, but somebody has to do it, even at the risk of attracting the sobriquet of "hypertechnical" or something equally charming.

But this nit is worth picking. Look at what we have here: the Court not only reaches a result not contemplated by the

---

[5]We note that the dissent mentions that Stone's counsel might have trouble explaining the result of our decision to his client. *Post,* at 124. We are not, however, introducing any novel issues addressing new arguments. Instead we address the issue that was presented by Stone in his complaint and, indeed was the basis of Stone's asserted cause of action, which the trial court expressly resolved in its determination. The same issue, moreover, constituted the basis of Stone's appeal to the Appellate Division. In addition, a statutory analysis was presented by both sides in their briefs to this Court as well as being argued before us.

appeal, it achieves a result not even *allowed* by our Rules because the issue the Court decides is *not* before us.

The issue is not, as the second sentence of the Court's opinion declares, "whether [a fixed-term] employment contract, entered into by a local utilities authority, remains valid and enforceable following the dissolution of that authority and another local utilities authority and the establishment of a new municipal utilities authority created to perform the combined functions of the dissolved authorities." *Ante* at 112. To be sure, that is the question presented by plaintiff's complaint, and that is what the trial was about. As well, that is what the appeal to the Appellate Division involved. But that is *not* the narrow issue to which our review is restricted by the dissent below.

The appeal to this Court is permitted under the authority of *Rule* 2:2–1(a)(2), which provides in part that

[a]ppeals may be taken to the Supreme Court from final judgments as of right: * * * (2) in cases where, and *with regard to those issues as to which*, there is a dissent in the Appellate Division * * *. (Emphasis added.)

The plaintiff's appeal and defendants' cross-appeal are thus limited: they must focus only on the single issue raised by the dissent, namely, does the successor to a municipal corporation that has terminated a fixed-term contract of employment avoid liability for the contract by showing that the termination was economically justified? If, as the majority below concluded, the answer is "yes," then the Court should affirm the judgment without thrashing around in the underbrush of legal issues not posed by the dissent below. If, on the other hand, the dissenter below has it right, we should modify the judgment to alter the terms of the remand.

So the question for me is not whether the Court's scholarly exercise gets to the "right" place or no; it is rather whether the Court should have embarked on its journey in the first place. In my view it should not have done so, because neither party asked us to, none of the lawyers expects us to, none of the parties is prepared for *this* result on this appeal (how does Stone's lawyer explain to him that he is out of court and out of

a job when under the rules of the game the *worst* that should have happened to him was that he got sent back to the trial court for another shot at sustaining his claim?), and nobody who enjoys a passing acquaintance with proper procedure will be able to reconcile our winking at our own Rule in this case and then insisting on strict adherence in some other appeal.

Our Rules of procedure are not simply a minuet scored for lawyers to prance through on pain of losing the dance contest should they trip. Those Rules have a purpose, one of which is to assist in the processing of the increasing number and complexity of cases, including appeals in this Court, that we have experienced over the last couple of decades. *See Cherry Hill Dodge, Inc. v. Chrysler Credit Corp.*, 194 *N.J.Super.* 282 (App.Div.1984) (citing *Kushner v. Winterthur Swiss Inc. Co.*, 620 *F.*2d 404 (3rd Cir.1980)). So it is that we amended *Rule* 2:2–1(a), effective in 1979, to restrict an appeal as of right based on a dissent below to the issue posed by the dissent. A party wishing to raise an issue that was accorded unanimous decision below must proceed by way of petition for certification under *Rule* 2:12. *See Brandenburg v. Brandenburg*, 83 *N.J.* 198, 203–04 (1980). Had that route been followed here, we then would have been able to decide whether we should consider the question that the Court today gratuitously decides.

It is no answer—not for me, anyway—to say that my more industrious and astute colleagues have found the time and resources to do that which I refuse to do, namely, go beyond the issue before us in order to accommodate our own free-floating views of justice. I can muster up whatever fortitude is required to resist the Circean allure of that approach, for it is not inconceivable to me that the lawyers who have lived with this case actually know a lot more about it than we do, and they may have structured the appeal to this Court the way they did for reasons that are of no proper concern to us. We should take the appeal as it comes to us, not as we would wish to have it presented. In that connection I note that the defendants before us filed not only a notice of cross-appeal but a notice of

petition for certification, but thereafter failed to file the petition, wherefore it was dismissed. I will assume that they know what they are doing with their case, but I will not assume that they should win hands down on an issue that they did not choose to pursue.

Nor is it any answer to suggest, as the Court does, *ante* at 115–17 n. 2, that a proper formulation of the issue on appeal when there is a dissent below is guided by the *judgment* of the Appellate Division. It is not. Our review is circumscribed not by the judgment below but by the issue that divides the Appellate Division. Besides, if it *is* the judgment that controls, then we should be considering only the alternatives of the Appellate Division majority's judgment, which is to reverse the summary judgment for defendants and remand for further consideration of the "economic justification" issue, *Stone v. Township of Old Bridge*, 215 *N.J.Super.* 361, 372 (1987), and the dissenter's proposed judgment, which would have permitted plaintiff to pursue his "valid claim" unencumbered by any defense of economic justification for non-assumption of his contract. *Id.* at 373.

Finally, it is no answer, again as the Court suggests, *ante* at 115–17 n. 2, that the parties have briefed an issue not properly before us. That they have not followed the Rules does not mean that this Court should demonstrate the same disrespect for its own procedural mandates. One might observe that the parties briefed as well the issue of counsel fees, not touched on by the dissent below. Correctly, the Court ignores that question.

Like Justice Frankfurter, I do not perceive procedure as "just folderol or noxious moss. Procedure—the fair, orderly and deliberative method by which claims are to be litigated—goes to the very substance of the law." *Cook v. Cook*, 342 *U.S.* 126, 133, 72 *S.Ct.* 157, 161, 96 *L.Ed.* 146, 152 (1951) (Frankfurter, J., dissenting). Adhering to what I understand the correct procedure to be, and based on what is before us, I would affirm

substantially for the reasons set forth in the majority opinion of the Appellate Division.

Justice STEIN joins in this dissent.

*For reversal and reinstatement* —Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN and GARIBALDI–5.

*For affirmance*—Justices CLIFFORD and STEIN–2.