Bishop v. Bourgeois.

---

### DAN BISHOP

*v.*

### ANNA ESTELLE BOURGEOIS.

[Filed July 1st, 1899.]

1. Equity is the proper forum in which to enforce contracts between husband and wife.

2. A wife's promissory note is forceful only when some beneficial consideration proceeds to her or to her estate.

Bishop v. Bourgeois.

3. The wife's possible share in the surplusage of her husband's personalty in case he should die intestate and leave any, is too remote to operate as a beneficial consideration for her promissory note, given to pay his debts incurred for the purchase-money of personal property acquired by him.

4. Where a contract which a married woman was incapable of making is sought to be enforced against her, an estoppel will not be worked in order to give it validity.

The bill in this case is filed by Dan Bishop, the holder of a promissory note made by the defendant, Anna Estelle Bourgeois, the wife of one Anderson Bourgeois. The following is a copy of the note:

"$1,000.                                    ESTELLVILLE, June 26, 188

"Two years after date I promise to pay Anderson Bourgeois or order one thousand dollars for value received, without defalcation or discount, with interest.                    .            "A. ESTELLE BOURGEOIS."

The circumstances under which this note was made and came to the hands of the complainant, Bishop, are somewhat disputed, but by the weight of the evidence they appear to be as follows:

One Ellis Reeves was, in June, 1888, engaged at Dorchester, Cumberland county, in business as a ship carpenter. In that year he rebuilt a vessel for Dr. Palen, of Philadelphia. Reeves demanded payment of Palen, who told him he had traded the vessel to Anderson Bourgeois, who was the husband of the defendant. Bourgeois proposed to give Reeves his note in pay-ment for the rebuilding of the vessel, and Reeves agreed to accept it, but on inquiry found that he could not "handle it," and so informed Bourgeois, adding that if he had Mrs. Bour-geois' note he could "handle" that. Reeves then attended at Bourgeois' house, and in his presence Mr. Bourgeois had the note drawn up and obtained his wife to sign it. Reeves then took it and a few days after sold it to Bishop for less than its face value. Reeves claims to have had a right of lien upon the vessel when Bourgeois bought it from Palen, and says he re-leased the vessel from this lien when Palen agreed to transfer the schooner to Bourgeois.

Anderson Bourgeois, the husband, appears to have paid $400 on account of his proposed purchase of the vessel before the giving of the note in question and to have paid some interest on the disputed note. Afterward, in some proceeding against the boat and Dr. Palen, not fully proven, the marshal sold the boat by what is claimed to have been a superior title, and Palen was thus prevented from fulfilling his part of the contract. Mr. Bourgeois swears that Dr. Palen never did in fact transfer the vessel to him, and he does not appear to be contradicted on this point.

After Bishop had bought the note Mr. Bourgeois paid the interest for some time, and when he ceased Bishop brought suit at law against Mrs. Bourgeois, the maker, and against Reeves and Mr. Bourgeois as endorsers. Mrs. Bourgeois defended on the ground that no consideration proceeded to her for the note; that she was merely an accommodation maker for the benefit of her husband and of Reeves, and on this the complainant, Bishop, plaintiff in that suit, alleges he suffered a voluntary non-suit. He files this bill solely against Mrs. Bourgeois and prays that she may be decreed to pay the note with interest.

Mrs. Bourgeois defends on the ground that she was a married woman when the note was given; that it was made in a transaction in which she took no part and in which she had no interest, and which brought to her no benefit whatever; that she signed the note at the request of her husband and Reeves and for their accommodation, without receiving any consideration therefor; that she paid no interest and did not know until about the time the suit was brought that the complainant considered her liable upon it.

*Mr. John S. Mitchell*, for the complainant.

*Mr. George A. Bourgeois*, for the defendant.

GREY, V. C.

The complainant filed his bill in this court to enforce the payment of Mrs. Bourgeois' note, alleging that as that contract,

which he holds, is on its face an agreement between husband and wife, he can have no standing in a court of law to enforce it. He has undoubtedly selected the proper forum in which to present his claim. *Rahway Bank* v. *Brewster*; *20 Vr. 231.*

The general rule that the contracts of a married woman are void at common law is practically undisputed.. One of the elementary principles on which this rule is founded is that the wife is presumed to be in the power of the husband and her contracts to have been made under his coercion. *Reeve Dom. Rel.* *98.* It is only when every presumption of any possible coercion is removed out of the way that the wife is held to be bound. *Reeve Dom. Rel.* *99.* The cases in which the contracts of a wife are enforced stand under this exception, and it is held that if she ceases to be under his power by reason of his absence from the realm (*Co. Litt. 133 (r) et seq.*), or in case of his civil death (*Co. Litt. 133 (a)*; *2 Kent Com.* *154*), she may be held to answer separately. When, however, the wife acts with reference to her separate estate she may lawfully separately dispose of it in any manner not inconsistent with the terms of the instrument under which she holds it. *Leaycraft* v. *Hedden, 3 Gr. Ch. 548.* But in order to enforce payment of her debts they must have been contracted for the benefit of her separate estate or for her own use on the credit of it. *Armstrong* v. *Ross, 5 C. E. Gr. 114.*

The complainant's contention in this case is that the defendant wife should be decreed to pay this promissory note, because a beneficial consideration proceeded to her—first, through the sale of the schooner to Bourgeois, which increased his personal estate, and that she thus received a benefit to her possible interest in this estate in case of her husband's death intestate; and secondly, because Reeves had a lien on the schooner for his bill, which lien, by reason of her giving of the note to Reeves, came to Mrs. Bourgeois. He further insists that Mrs. Bourgeois apparently executed the promissory note as maker and Bishop purchased and paid for it, and that by this Mrs. Bourgeois is estopped as against Bishop to deny the validity of her contract.

.   That the defendant was a married woman when the note in question was made; that the complainant knew this when he took the note, and that she did not participate in the transaction out of which the note came into being, appears substantially without dispute.  The original indebtedness, as it arose, was the indebtedness of the husband, Anderson Bourgeois, to Reeves. This is conclusively shown by the testimony of both Bourgeois and Reeves.  Palen was indebted to Reeves for work on the schooner; Bourgeois had contracted to buy the schooner from Palen, and it had been agreed between them that Bourgeois should pay to Reeves a part of the contract price on account of his bill for work done upon her.  Reeves had, as he says, accepted Bourgeois as his debtor.  He shows this by his effort to obtain the note of Bourgeois alone to be discounted.  The bargain was then complete.  Bourgeois had himself then received the consideration in Palen's agreement to transfer the schooner to him ; he was ready to give his (Bourgeois') note to Reeves; the latter was willing to take it.  The transaction, so far as the exchange of values was involved, was concluded.  Bourgeois had received the benefit of the contract, conveying the schooner to him, and was arranging the ways and means of payment.  It is quite evident that Reeves considered Bourgeois as his debtor, and that the latter's note to Reeves would have been accepted save for the single reason that with Bourgeois' name alone on it Reeves was unable to "handle it"—that is, to have it discounted.

.   It was not until this stage of the business that Mrs. Bourgeois' name was ever mentioned.  She was then brought in at Reeves' suggestion, not as a purchaser of the schooner, nor a transferee of the lien on her, nor as a bargainer in any respect whatever; nothing was reconsidered or rearranged.  Mrs. Bourgeois came into the business solely and only to make the note, which, by joining her name with that of her husband, would give his obligation such additional credit that Reeves might readily "handle it"—that is, discount it.  Mrs. Bourgeois had nothing to do with the negotiations with Palen for the purchase of the schooner, nor with Reeves touching the payment for it.  All these matters had been concluded before she appeared in the

transaction.   She was brought in, as stated, to help make her husband's name good in promising to pay for a purchase precedently made for his own sole benefit.   Nothing was agreed to be given her, nor was there in fact or in law any benefit conferred upon her or upon her estate.   Her possible interest in the surplus of her husband's personalty, in case he should have any at the time of his decease, and should die intestate, and she should survive him, is entirely too remote and illusory to stand as a beneficial consideration to support her undertaking to make good her husband's obligation to pay Reeves for the vessel.

As to the contention that Reeves' lien on the schooner, by reason of the transactions between the parties, came to Mrs. Bourgeois, and the argument that in effect Mrs. Bourgeois purchased of Reeves his lien against the vessel, the foregoing narration of the facts shows that no incident occurred which justifies such a claim.   There was no agreement whatever for such a purchase of the lien by Mrs. Bourgeois, nor did any of the parties contemplate or intend such a result.   Reeves swears that he released the lien, and does not hint that he ever considered the transfer of it to anyone, and certainly never to Mrs. Bourgeois. Nothing in the whole course of the business was done which would have entitled Mrs. Bourgeois to have enforced such a lien, nor was such a possibility shown ever to have been within the thought of anyone.   As above stated, the dealings with relation to the schooner were completed, resulting in the indebtedness of Mr. Bourgeois for the purchase, before Mrs. Bourgeois was mentioned as a party to the note.   She came in not as an original contractor, but to lend her credit to make negotiable her husband's note.   Reeves did not release the schooner because of Mrs. Bourgeois giving the note.   He had already released the schooner, accepted Bourgeois as his debtor and tried to get some assurance that he could get his paper discounted before Mrs. Bourgeois' name was brought in to aid in accomplishing that result.

Nor was there in fact any novation whereby Reeves, Palen and Mrs. Bourgeois agreed that Mrs. Bourgeois should pay Reeves the debt which Palen owed, and that Reeves should for-

give Palen and accept Mrs. Bourgeois in his stead. Nothing of this kind, affecting Mrs. Bourgeois, appears to have been within the dealings of the parties. If this had taken place, it must be observed that, in view of the fact that the property of Palen in the schooner came to Mr. Bourgeois and not to Mrs. Bourgeois, it would not have been a beneficial consideration moving to her, though it might have been a damage consideration to Reeves, if he had surrendered his claim against Palen, taking Mrs. Bourgeois as his debtor in Palen's place. But that was not the transaction; it was Mr. Bourgeois, not Mrs. Bourgeois, who agreed to pay Palen's debt, and if there was a novation Mrs. Bourgeois was not a party to it.. The rule that the wife's contract, in order to be forceful, must be her original undertaking based upon a consideration beneficial to her or her estate, is firmly established. In *Perkins* v. *Elliot, 8 C. E. Gr. 526,* and in cases where such a beneficial consideration is necessary to support the contract, the surrender of a lien by the other party or other consideration detrimental to him does not make the contract original. *Cowenhoven* v. *Howell, 7 Vr. 327.*

There was neither a purchase of Palen's debt to Reeves by Mrs. Bourgeois, nor a surrender of it and an acceptance of Mrs. Bourgeois as the new debtor, nor a transfer of the lien of Reeves on the schooner to Mrs. Bourgeois, as a consideration for her giving of the note. She gave it at Reeves' suggestion and her husband's request, to enable his debt to be more readily negotiated, without any consideration whatever moving to her.

The complainant also insists, that as against him, Mrs. Bourgeois, having made a promissory note negotiable on its face, and he having bought it, she is estopped from setting up her incapacity to become a surety, as her defence.

The incapacity of a married woman to make any contract at common law has been above stated. The statute in force in 1888, when the contract was made, which, it is claimed, enabled her to contract, declares that "nothing herein contained shall enable such married woman to become an accommodation endorser, guarantor or surety, *nor shall she be liable on any promise*

*to pay the debt or answer for the default or liability of any other person." Rev. of 1877 p. 637 § 5.*

The face of this statute, so far from enabling a wife to become chargeable upon a promise to pay the debt of another, appears rather to positively protect her from such a possibility. The phrasing, so protecting her, is broad enough to extend its shield to save her from liability on any promise to pay the debt of another, no matter in what form it may be expressed.

The touchstone which will solve all questions as to the wife's liability is whether her undertaking, whatever may be its form, is in fact a promise to pay the debt of another. If this be the case, an estoppel will not be worked to charge the wife on a surety contract which she is incapable of making at common law, and from liability under which she is expressly relieved by the very words of the statute. That she made the note in question without any liability on her part to her husband, the payee, or to Reeves, who, it was understood, was to receive it, has been hereinbefore shown. The note was not made and given for any consideration which passed to her, but to aid in the payment by her husband of the amount owing by him upon his precedent agreement to pay for property which passed to him.

The case of *Hackettstown Bank* v. *Ming, 7 Dick. Ch. Rep. 156,* is cited by the complainant in support of his contention that the wife is estopped to deny her liability on this note where in form she appears to promise as an original contractor. In that case one Swayze and Mrs. Ming, in order to raise money for Mr. Ming, made a note payable to his order. In that form, so long as it was held by Ming, it had no consideration whatever, and was nothing but accommodation paper. Ming, the payee, could have recovered nothing upon it, either at law or in equity. It was discounted by the bank's officer, and all the proceeds were in good faith put to the credit of Mrs. Ming by a check given payable to her order. She was thus tendered the opportunity to receive the full beneficial consideration for her contract. She accepted it and subsequently marked the check payable to her husband's order, and he used it in payment of his

personal debt. The transaction was, as between the bank and Mrs. Ming, an original undertaking by her to pay the money on Mr. Ming's order, and when the bank had in good faith given to Mrs. Ming the full proceeds of her note, it did not lie with her to dispute her liability to the bank because of the manner in which she afterwards dealt with those proceeds. The note in the hands of the bank was, as stated in *Bank of Elizabeth* v. *Craig*, 1 *N. J. L. J. 154*, "her own engagement to pay back the money she had induced the plaintiff to let her have." The argument advanced by the complainant that a married woman, in a matter not relating to her separate estate, but in a transaction in which she is in fact a mere surety, receiving no beneficial consideration whatever, may yet be estopped to set up her incapacity and be held bound, because her contract is apparently an original undertaking, is not supported by the authorities cited. The contention is in direct contradiction of the declaration of the enabling statute. *Gen. Stat. p. 2017 § 26.*

In the *Hackettstown Bank Case, ubi supra,* the learned vice-chancellor, in dealing with the question of estoppel, uses language which shows some color of a declaration, that where the face of the wife's promissory note does not indicate that she was undertaking to satisfy the liability of another, she should thereafter be estopped as against one who discounted her paper to deny that she was liable as on her own original contract. *Hackettstown Bank* v. *Ming, 7 Dick. Ch. Rep. 160, 161.* The case presented for his consideration, however, showed that while the wife executed the note as maker, she also actually received the credit for the moneys raised on the note. She therefore had a beneficial consideration supporting the contract, as in fact her own primary undertaking to repay to the bank what she received. This was the ruling in *Bank of Elizabeth* v. *Craig, supra,* which the learned vice-chancellor cites. The first syllabus in the *Hackettstown Bank Case,* in express terms, limits the estoppel against the wife to "her acts done within the scope of the enabling acts," and the discussion shows that the learned vice-chancellor dealt with the acts done by the wife as within the power given her by the enabling statute. To have been within

the power given her by this statute, her undertaking could not have been to discharge the liability of another, but must have been to perform her own contract, made upon a consideration beneficial to her. No estoppel was necessary to charge her. It was not a case where, while incapable of acting, she, by her conduct, induced another to believe she had effectually acted, and on this to change his own position. She was capable of acting, and did act, and because she acted was held to be bound. An estoppel will not be worked to enforce a contract which the party whom it is sought to estop, had no power to make. So, in *Noel* v. *Kinney, 106 N. Y. 81,* the learned judge, who delivered the opinion of the New York court of appeals, declared that a married woman may be estopped by her acts and declaration in any matter in *respect of which she is capable of acting sui juris.* Where there is no legal capacity to contract, a party will not be estopped, even by falsely representing that he has capacity, for incapacity cannot be removed by the fraudulent representation of the actor. The law will not permit one legally incapacitated, to do that indirectly, which he or she cannot do directly. *Herm. Estop.* § *1105.*

The case at bar is one of those to which the proviso in the enabling act, above cited, directly applies. The husband and his creditor desired to secure the benefit of the wife's credit to enable the latter to obtain the money needed to discharge the husband's debts. They represented to her that she would not be held responsible, and thus obtained her to sign the note as maker, which the creditor took in payment of the husband's debt and sold to the complainant.

No consideration whatever moved to the wife, and it is now sought to make her liable on her promise to pay the debt of another.

In *Bank of Elizabeth* v. *Craig, 1 N. J. L. J. 153,* the wife was an endorsee of a note. She thus appeared to have not a primary but a secondary liability, but the court permitted proof to be taken to show that in fact she herself received the benefit of the transaction with the bank. So, in *Todd* v. *Bailey, 29 Vr. 10,* the wife appeared on the face of the note as a joint maker

with her husband, but the case was held to be rightly tried when it turned upon an inquiry as to which was the principal debtor.

To deny a wife the right to set up her incapacity as a defence in such a case, is not only to defeat the express words of the statute, but also to precipitate upon a class unacquainted with business matters, the misfortunes depicted by Chief-Justice Beasley in *Perkins* v. *Elliott, 8 C. E. Gr. 533*, where, speaking for the court of appeals as to the proposition to enforce the surety contracts of married women, he says: "To give to such an inexperienced body of persons the right to endorse notes, to accept bills, and to become surety on bonds and other instruments under the urgency of their husbands, or from the importunities of their relatives or friends, would not be a boon but a calamity. In my opinion, there is nothing in the general doctrines appertaining to the subject that should compel this court to concede the existence of the power in question, nor is there any consideration of public policy which seems persuasive of such a concession. I agree, therefore, with the chancellor as to the general principle that a court of equity will not effectuate the contract of a married woman not founded on a valuable consideration, binding her as surety for another."

The complainant's bill should be dismissed.