**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2402-22

STEVEN RODAS,

    Plaintiff-Appellant,

and

SILVIO ACOSTA, RUBIN
VARGAS, MEXZI BAILETTI,
CHRISTIAN PINEDA, and
RICARDO BORGES,

    Plaintiffs,

v.

TOWN OF WEST NEW YORK,
and GABRIEL RODRIGUEZ,
both individually and/or in his
official capacity,

    Defendants-Respondents.

_____

Argued May 13, 2024 – Decided March 5, 2025

Before Judges Gilson, DeAlmeida, and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3156-20.

Ryan Milun argued the cause for appellant (The Milun Law Firm, LLC, attorneys; Ryan Milun, of counsel; Susan Ferreira, on the briefs).

Robert E. Levy argued the cause for respondents (Scarinci & Hollenbeck, LLC, attorneys; Robert E. Levy and Ajoe P. Abraham, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiff Steven Rodas appeals from the March 8, 2023 order of the Law Division granting summary judgment to defendants Town of West New York and Gabriel Rodriguez, and dismissing his amended complaint alleging political affiliation retaliation and breach of contract arising from his termination as an employee of a municipal parking authority. We affirm.

I.

We discern the material facts from the motion record, viewing them in the light most favorable to plaintiff, the non-moving party. See Memudu v. Gonzalez, 475 N.J. Super. 15, 18-19 (App. Div. 2023). In 2017, plaintiff began his employment with the West New York Parking Authority (WNYPA), an independent public corporate body, as a Qualified Purchasing Agent (QPA) and Assistant Chief Financial Officer (ACFO). WNYPA was created by West New York pursuant to the New Jersey Parking Authorities Law, N.J.S.A. 40:11A-1

to -26, for the purpose of addressing parking demands, including the preparation of comprehensive and coordinated plans for development, financing, construction, operation, and management of parking facilities in the municipality. By statute, WNYPA operated outside of municipal government, but final oversight of its decisions rested with the municipality.

When plaintiff began his employment with WNYPA, Felix Roque was the Mayor of West New York and Jamie Cryan was the Town Administrator. In September 2018, Cryan prepared a report (Dissolution Report) advocating for the dissolution of WNYPA and the absorption of its duties by a proposed new utility that would be directly managed by the municipality. The Dissolution Report estimated the proposed change would eliminate redundancies, increase municipal control of parking, and benefit West New York financially.

Among the redundancies listed in the Dissolution Report was that WNYPA had three positions, Executive Director, ACFO, and Field Operations Manager, that would be eliminated if WNYPA was dissolved and its functions absorbed by the municipality. The report stated that West New York

> currently expects to rehire all of the WNYPA's employees after dissolution, except for the [E]xecutive [D]irector, [A]ssistant [C]hief [F]inancial [O]fficer and [F]ield [O]perations [M]anager. The duties of those three employees not rehired will be absorbed by current Town employees. The cost of the salaries and related

3

benefits of these three employees will result in a significant savings.

The report also identifies savings from a significant decrease in professional fees associated with WNYPA, reduced insurance premiums for liability, auto and workers compensation by including those coverages in West New York's existing policies, and an increase in income from authorization of the use of credit cards at parking facilities. The recommendations in the Dissolution Report were not implemented by Roque in the eight months between the issuance of the report and the May 2019 mayoral election.

In the 2019 election, plaintiff actively supported and campaigned for Roque in his bid to be reelected as mayor. Plaintiff did not hold a high-ranking position in Roque's campaign. He acknowledged his role would be best categorized as a low-level volunteer, responsible for canvassing and distributing campaign material.

Rodriguez was Roque's principal opponent in the election. During the mayoral campaign Rodriguez promised, if elected, to address residents' complaints of insufficient municipal parking in West New York.

On May 8, 2019, shortly before election day, plaintiff and WNYPA executed a contract to continue his employment as QPA and ACFO of WNYPA for the period February 28, 2019, to February 28, 2022. The contract, which

had been approved by WNYPA in October 2018, provided WNYPA could terminate plaintiff only for cause.

On May 14, 2019, Rodriguez was elected mayor of West New York. He named Johnathan Castaneda to replace Cryan as Town Administrator. Castaneda was aware plaintiff supported Roque in the 2019 election and had seen him campaigning. Castaneda had previously expressed his dislike of Roque, although he supported him in the 2015 mayoral election at the request of Rodriguez, who was then politically allied with Roque.

Rodriguez named Luis Baez as Assistant Municipal Administrator of West New York, with primary responsibility for municipal personnel. Baez supported Rodriguez in the 2019 election and campaigned for him. He was aware plaintiff did not support Rodriguez and campaigned for Roque in the election.

In 2019, Kelly Schweitzer was employed as a Human Resources Clerk with West New York. She supported Rodriguez in the 2019 election and was aware plaintiff supported Roque in the election.

On or about August 22, 2019, the Rodriguez administration implemented the recommendations in the Dissolution Report, following the recommendations in the report. The municipality dissolved WNYPA and created a new parking utility that was a component of municipal government to provide parking

A-2402-22

services in the municipality. Rodriguez voted for the ordinance dissolving WNYPA. As recommended in the Dissolution Report, the positions of Executive Director, ACFO, and Field Operations Manager at WNYPA were eliminated.[1]

Shortly after WNYPA was dissolved, Castaneda, Schweitzer, and Baez interviewed the employees of WNYPA to determine who it was necessary to retain to seamlessly maintain parking services in the town. Plaintiff was the only employee not interviewed. Of twenty-eight WNYPA employees, two, plaintiff and Rubin Vargas, who also campaigned for Roque during the 2019 election, were not transitioned to the new parking utility. Amiris Perez, the Executive Director of the WNYPA, who held a high-level position in Roque's 2019 mayoral campaign, was hired by the municipality in a different position after WNYPA was dissolved.

Castaneda testified that although plaintiff was considered for a different position, he was not transitioned to the new parking utility because his position

---

[1] Pursuant to N.J.S.A. 40A:5A-20, West New York was required to make adequate provision for the payment of all obligees on WNYPA's existing obligations. As of December 31, 2017, the latest date addressed in the Dissolution Report, WNYPA had $7 million in outstanding revenue bonds and a lease with an outstanding balance of $845,000. It is undisputed the ordinance dissolving WNYPA was approved by the Local Finance Board as required by N.J.S.A. 40A:5A-20.

as QPA and ACFO was redundant, as the municipality had a QPA. Castaneda also stated he believed plaintiff did not have the required certifications to be a QPA and ACFO. He conceded he had no knowledge of how plaintiff had been performing in his positions at WNYPA without those certifications.

Baez stated plaintiff was not transitioned to the new parking utility because his position was redundant and he was not qualified to be a QPA and ACFO. He could not, however, identify with precision the qualifications he believed plaintiff lacked to hold those positions.

Schweitzer also identified plaintiff's position as redundant. She too stated her belief plaintiff was not qualified to be a QPA and ACFO. Plaintiff was certified as a QPA by the Department of Community Affairs in 2018.

In a letter dated January 3, 2020, plaintiff was notified his employment with WNYPA was terminated effective November 25, 2019, and his employment contract was "null and void" because the authority no longer existed. Plaintiff acknowledges other West New York employees who supported Roque in the 2019 election, including Roque's son and someone who held a high-level position in the Roque campaign, were not terminated and still work for the municipality. The record establishes two people who supported Roque in the 2019 election work at the new parking utility.

A-2402-22

Plaintiff filed an amended complaint in the Law Division alleging defendants: (1) terminated his employment with WNYPA in retaliation for his support of Roque in the 2019 mayoral election in violation of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2; and (2) breached his employment contract by terminating him without cause. Plaintiff seeks compensatory damages, punitive damages, equitable relief, and attorney's fees.

After discovery, defendants moved for summary judgment. On March 8, 2023, the trial court issued a written decision granting defendants' motion. The court found it was undisputed plaintiff was terminated through implementation of a recommendation to dissolve WNYPA devised during the Roque administration. That plan recommended elimination of plaintiff's position as ACFO because of the redundancy that would be created by transfer of the WNYPA's responsibilities to a new municipal utility. The court found plaintiff raised no genuine issue of material fact that his political support of Roque in the 2019 election was a substantial or motivating factor in the municipality's decision to execute the recommendation to dissolve WNYPA, and, as a result, terminate plaintiff's employment.

With respect to plaintiff's breach of contract claim, the trial court also found West New York was authorized by N.J.S.A. 40A:5A-20 to dissolve the

WNYPA. Relying on <u>Stone v. Old Bridge Township</u>, 111 N.J. 110, 122 (1988), the trial court held that when a municipal authority is dissolved, the successor authority is under no obligation to assume the employment contracts of the predecessor authority, provided the termination of an employment contract was undertaken "to promote . . . legitimate objectives . . . in good faith for proper governmental purposes . . . ." Having found defendants were entitled to summary judgment on plaintiff's retaliation claims, the trial court concluded plaintiff could not establish the termination of his contract was done in bad faith.

Finally, the trial court found Rodriguez was entitled to qualified immunity because plaintiff produced insufficient evidence on which a factfinder could find that Rodriguez violated plaintiff's clearly established rights. A March 8, 2023 order memorialized the trial court's decision.

This appeal follows. Plaintiff argues: (1) he established a prima facie case of political affiliation retaliation under the NJCRA, entitling him to a trial; (2) summary judgment on his breach of contract claims was not warranted because genuine issues of material fact exist with respect to whether defendants terminated his contract to advance legitimate objectives in good faith for proper governmental purposes; and (3) genuine issues of material fact preclude a finding Rodriguez is entitled to qualified immunity.

9 <span>A-2402-22</span>

II.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A.    Plaintiff's Retaliation Claims.

The NJCRA provides in relevant part:

> Any person who has been deprived of any substantive
> due process or equal protection rights, privileges or
> immunities secured by the Constitution or laws of the
> United States, or any substantive rights, privileges or

10

immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with . . . by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

[N.J.S.A. 10:6-2(c).]

To establish a claim for political affiliation retaliation under the NJCRA, a plaintiff must prove: "(1) [he] was employed at a public agency in a position that does not require political affiliation, (2) [he] was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007); Lapolla v. Cty. of Union, 449 N.J. Super. 288, 298 (App. Div. 2017). If the plaintiff meets this burden, a defendant "may 'avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity.'" Galli, 490 F.3d at 271 (quoting Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1977)).

There is no dispute plaintiff met prongs one and two of the Galli test. Plaintiff argues he raised genuine issues of material fact sufficient to have a factfinder determine if he satisfied prong three of Galli. In support of his

argument, plaintiff relies on the temporal proximity of six events: (1) the renewal of his employment contract shortly before the May 2019 election; (2) his support of Roque in the election; (3) derogatory comments he claims supporters of Rodriguez made to him during the election, including "[y]ou guys are getting fired" if Rodriguez wins; (4) Rodriguez's election victory; (5) defendants' decision to dissolve WNYPA; and (6) only plaintiff and one other WNYPA employee not being transitioned to the new parking utility.

We have carefully considered the record and agree with the trial court's conclusion that plaintiff did not produce sufficient evidence on which a factfinder could find his political activity was a substantial or motivating factor in West New York's decision to dissolve WNYPA and eliminate his position as QPA and ACFO. It is undisputed the Dissolution Report, which recommended elimination of defendant's position, was formulated during Roque's administration. Thus, prior to plaintiff's involvement in the 2019 election, his position at WNYPA was targeted for elimination to further the government objectives identified in the Dissolution Report. Among those objectives were an increase in municipal parking in the town and financial savings.

Roque did not implement the recommendations in the Dissolution Report prior to the May 2019 election. Rodriguez, however, campaigned on the issue

of improving municipal parking in West New York. While the parties have not identified evidence that Rodriguez promised to implement the recommendations in the Dissolution Report if elected, plaintiff admits he campaigned for Roque because he thought he would lose his position at WNYPA if Rodriguez was elected and implemented the recommendations in the Dissolution Report. That admission suggests it was not plaintiff's political activity that caused Rodriguez to dissolve the WNYPA and terminate plaintiff. Instead, it was the threat to plaintiff's employment identified in the Dissolution Report prior to the 2019 election and Rodriguez's campaign promises about parking that caused plaintiff to campaign for Roque.

Plaintiff's argument he was singled out for termination instead of being transferred to the parking utility as retaliation of his political activity is rebutted by the Dissolution Report. It is undisputed the report, developed by the administration of the candidate plaintiff supported in the 2019 election, states that West New York had a QPA and the dissolution of WNYPA would make plaintiff's position redundant. There was no need to interview plaintiff, as an identified objective of the Dissolution Report was the elimination of his and other WNYPA high-level positions to benefit the municipality financially. Retaining plaintiff after dissolution of WNYPA would have negated an

identified anticipated benefit of implementing the recommendations in the Dissolution Report.

Plaintiff's claim he was targeted because of his political activity is based only on speculation. Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). Although plaintiff claims disparaging remarks were made to him by Rodriguez supporters during the 2019 campaign, he produced no evidence supporting that allegation or linking any such comments directly to Rodriguez, the members of the governing body who adopted the ordinance authorizing dissolution of WNYPA, or Castaneda, Baez, or Schweitzer.

Additionally, defendants produced sufficient evidence to be entitled to summary judgment on the issue of whether "the same employment action would have been taken even in the absence of the protected activity." Galli, 490 F.3d at 271 (quotation omitted). The Dissolution Report details the principal

14

objectives of dissolving WNYPA: financial benefits for the municipality and a return of direct control of parking to municipal officials. Rodriguez campaigned on his promise to improve municipal parking in West New York. Plaintiff produced no evidence that Rodriguez enlisted the governing body of the municipality to enact an ordinance dissolving WNYPA, to provide for the satisfaction of WNYPA's existing financial obligations, to create a new municipal parking utility, and to transfer numerous employees to that utility, including other Roque supporters, all in order to retaliate against plaintiff.

Plaintiff's argument the new parking utility has not been successful and that its identified goals could have been accomplished by the WNYPA is not relevant to our analysis. The success, or lack therefore, of defendants' attempt to achieve the objectives outlined in the Dissolution Report is not indicative of their motive in deciding to dissolve WNYPA.

B.      Plaintiff's Breach of Contract Claims.

We agree with the trial court's conclusion defendants are entitled to summary judgment on plaintiff's breach of contract claim. N.J.S.A. 40A:5A-20, which authorizes a municipality to dissolve a municipal authority, does not require the successor authority to assume existing employment contracts of the predecessor authority. The statute provides:

[T]he governing body of a local unit which has established an authority shall have the power and is authorized by ordinance in the case of a municipality . . . to dissolve the authority, except that the ordinance . . . shall be approved by the Local Finance Board prior to adoption . . . . The Local Finance Board shall approve the dissolution if it finds that the ordinance . . . makes adequate provision in accordance with a bond resolution or otherwise for the payment of all creditors or obligees of the authority . . . . In the event that an authority has obligations outstanding at the time of the taking effect of the ordinance . . . to dissolve the authority, the local unit . . . dissolving the authority [is] authorized to either issue obligations in furtherance of the dissolution or assume the responsibility for and payment of the obligations of the authority being dissolved . . . .

[N.J.S.A. 40A:5A-20.]

In Stone, the Court held that a fixed-term employment contract with a dissolved authority is not an obligation that a municipality or successor authority must make adequate provisions to satisfy under in N.J.S.A. 40A:5A-20. 111 N.J. at 112. Stone was the Executive Director of the Old Bridge Municipal Utilities Authority (OBMUA). Ibid. He had a five-year employment contract with OBMUA that provided he could be removed from office only for cause. Ibid. Old Bridge Township enacted an ordinance dissolving the OBMUA pursuant to N.J.S.A. 40A:5A-20. Id. at 112-13. The ordinance created a new authority. Id. at 113.

Shortly after its creation, the new authority terminated Stone's contract. Id. at 114. Stone brought suit, alleging the termination of his contract was unlawful and the new authority was required to continue his employment. Ibid. The Chancery Division granted summary judgment to the township, concluding N.J.S.A. 40A:5A-20 did not mandate the continuation of Stone's employment contract with the new authority. Ibid. We reversed in a split decision. Stone v. Old Bridge Twp., 215 N.J. Super. 361 (App. Div. 1987). Stone filed an appeal based on the dissenting opinion of our colleague. Stone, 111 N.J. at 114.

Before the Supreme Court, Stone argued the statutory obligation to make "adequate provision . . . for the payment of all . . . obligees" of the dissolved authority required the township to assume his employment contract or compensate him for termination of the contract. Id. at 117. The Court, however, held that the term "obligation" under N.J.S.A. 40A:5A-20 is limited to debt instruments. Id. at 119. As the Court explained,

> it is fair to read the term "obligation" as referring to an authority's indebtedness. Bonds, project notes, and bond anticipation notes are all forms of obligations in this sense, and it is only within this context that the term "obligation" is used. In order to achieve a basic consistency and harmony of meaning, it follows that an "obligee" must be understood as the person or entity to whom such a debt is owed.
>
> [Ibid.]

17

The Court held that such obligees do not include parties to an employment contract with the dissolved authority. "It is not compatible with the basic aim of [N.J.S.A. 40A:5A-20] to make new authorities assume all of the employment contracts of their dissolved predecessors without regard to their own need to retain such employees." Id. at 120. The Court continued, "[i]t seems obvious that requiring the payment of two salaries when there is a need for only one position would promote neither efficiency nor economy." Ibid. "[I]t is not surprising that nothing in the legislation . . . indicates any intent to require the newly created authority to assume the managerial employment contracts entered into by the prior entity." Ibid. Thus, the Court concluded,

> [a]s long as an authority undertakes to exercise its statutory powers to promote its legislative objectives, and does so in good faith for proper governmental purposes, it may lawfully terminate a fixed[-]term employment contract incidental to its establishment as a successor entity created to perform governmental functions in addition to those of a predecessor authority.
>
> [Id. at 122.]

The Court cautioned, however, that termination of an employment contract by a successor authority "in bad faith or to achieve improper ends" would be arbitrary and capricious and, therefore, invalid. Id. at 123. Because the new municipal authority had no statutory obligation to assume Stone's

18

employment contract and he had not alleged bad faith or improper purpose, the Court concluded that once the old authority was dissolved, Stone's contract was subject to termination. Ibid.

We have concluded defendants are entitled to summary judgment on plaintiff's claim his employment was terminated as retaliation for his political affiliation with Roque. He alleges no other improper motive for the dissolution of WNYPA and the decision to terminate his contract. Because the new municipal parking utility had the statutory authority to terminate plaintiff's employment in good faith, as it did to accomplish one of the objectives of the recommendations in the Dissolution Report, the trial court's grant of summary judgment to defendants on plaintiff's breach of contract claim was warranted.

C.    Qualified Immunity.

In light of our conclusion defendants are entitled to summary judgment on plaintiff's NJCRA and breach of contract claims, we need not review the trial court's conclusion Rodriguez is entitled to qualified immunity on those claims.

To the extent we have not specifically addressed any of plaintiff's remaining contentions, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

20